IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| | * | |
| ROSE ISBELL, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 11-cv-01152-AW |
| | * | |
| FRIEDMAN, *et al.*, | * | |
| Defendants. | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

Currently before the Court are Defendants Stephen Friedman ("Friedman") and Joseph, Greenwald & Lake, P.A.'s motion to dismiss, Doc. No. 9, and Defendants' motion to dismiss Plaintiff's amended Complaint, Doc. No. 14. Plaintiff Rose Isbell ("Isbell") is proceeding *pro se* in this case. The Court has reviewed the motion papers submitted by the Parties and finds that no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons articulated below, the Court will grant Defendants' motion to dismiss Plaintiff's amended Complaint and deny Defendants' original motion to dismiss as moot.

### I.      Factual & Procedural Background

The following facts are drawn from the amended Complaint and attached exhibits. The case at bar is the result of Plaintiff's dissatisfaction with an expert witness hired by her attorney in a malpractice case. Plaintiff initially retained attorney Glen Cooper and his law firm, Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper ("Paley Rothman") to represent her in her divorce case in Montgomery County Circuit Court. Compl. ¶ 5. Feeling that Cooper had failed to conduct a diligent, competent investigation of whether her husband had dissipated substantial

1

marital assets, Plaintiff retained attorney Mark Chalpin to represent her in a legal malpractice suit against Cooper and Paley Rothman. Compl. ¶ 8.

On March 5, 2009, Chalpin retained Defendant Friedman as an expert witness to investigate and render an opinion as to whether or not Cooper and Paley Rothman had breached the standard of care among Maryland family lawyers in representing Plaintiff in her divorce action. Compl. ¶ 9. Prior to being retained, Friedman told Plaintiff that he would form an opinion as to whether Cooper and Paley Rothman had committed malpractice. Compl. ¶ 10. Although the retainer agreement was between Friedman and Chalpin, Plaintiff gave her approval of Friedman's retention as an expert witness. *Id.* The retainer agreement for Friedman's services includes an initial refundable-if-not used fee of $10,000 and an hourly billing rate at $350 an hour. Doc. No. 13 Ex. 1 at 1. Friedman ultimately billed and Plaintiff's husband paid about $60,000 for Friedman's services. Compl. ¶ 11.

On August 17, 2009, Chalpin filed Plaintiff's legal malpractice claim against Cooper. Compl. ¶ 12. Five days later, Plaintiff, her husband and Chalpin met with Friedman, at which time Friedman, who had already conducted significant research in the case, stated that "of course Paley Rothman is guilty of legal malpractice." Compl. ¶ 13. Friedman told Plaintiff's husband that he would testify that there was a breach of the standard of care. Compl. ¶ 14. Friedman required another $17,000 to execute an affidavit to that effect, which was billed to Chalpin and ultimately paid by Plaintiff's husband. *Id.*

On October 2, 2009, Friedman executed the affidavit in which he stated that, based upon his review of 5,000 pages of pleadings, transcripts and other documents, it was his unqualified opinion "within the realm of reasonable legal probability that all of the evidence in the record

that I have seen is consistent with the claims of [Plaintiff]" and "it appears that there has been a breach of the standard of care to which [Plaintiff] was entitled to." Doc. No. 13 Ex. 3.

On November 19, 2009, Chalpin had a teleconference with Friedman in which he expressed Plaintiff and Plaintiff's husband's concern that they were paying Friedman exorbitant sums, that they were running out of money and that Friedman needed to stand down from the case until further notice. Compl. ¶ 17. However, on January 29, 2010, Friedman was still designated as Plaintiff's legal malpractice expert in the legal malpractice lawsuit. Compl. ¶ 18. Chalpin and Plaintiff believed that Friedman would still testify that Cooper and Paley Rothman had breached the standard of care in Plaintiff's divorce case. *Id.* About two months after Plaintiff told Friedman to stop billing on the case and shortly after being designated as Plaintiff's legal expert, Friedman began to stand down from his opinion that Paley Rothman was had committed malpractice. Compl. ¶ 19. Friedman told Chalpin that he would need an additional retainer and more money if he was going to perform more work for Plaintiff as an expert. *Id.* Plaintiff did not pay Friedman.

On July 12, 2010, Chalpin withdrew as Plaintiff's attorney. Compl. ¶ 21. Three days later, Friedman sent Plaintiff a letter in which he stated that she needed to retain a new expert witness. *Id.* Plaintiff's new attorneys made multiple offers to enter into a retention agreement with Friedman, all of which he rejected. *Id.* Cooper's law firm subsequently noted a deposition for Friedman to take place on September 28, 2010. Compl. ¶ 23. On September 7, 2010, Plaintiff's husband sent Friedman a check for $3,600 to pay for 10 hours of his time to prepare for the impending deposition. Compl. ¶ 25.

At the September 28 deposition, Friedman testified that he did not have any opinion concerning whether the underlying defendants, Cooper and Paley Rothman, had breached the

standard of care in their representation of Plaintiff. Compl. ¶ 29. On October 14, 2010, Plaintiff

and her husband met with Friedman and asked him if he would testify as to the contents of his

October 2, 2009 affidavit at another upcoming deposition. Compl. ¶ 31. Friedman replied that he

was under a duty to testify truthfully to the courts and would comply with that duty. *Id.* On

October 23, 2010, Plaintiff's husband sent Friedman another letter offering Friedman $7,200 in

exchange for "finishing the job you signed up to do, no more and no less, and in the manner you

see fit." Compl. ¶ 33. This offer, like all the other offers made by Plaintiff, her husband, or her

attorneys after Chalpin withdrew from Plaintiff's case, was rejected by Friedman. *Id.* Friedman

told Plaintiff's attorneys that he wasn't willing to finalize his opinion and testify against Paley

Rothman and that it wasn't a question of money. Compl. ¶ 34.

On November 15, 2010, a pretrial hearing was held in the legal malpractice case. Compl.

¶ 35. The underlying defendant Cooper had filed a motion for a protective order to prevent

another deposition of Friedman. *Id.* The Court made findings that Friedman had not been

retained by Plaintiff, that Friedman had not been paid, that Plaintiff had withheld critical

discovery from Friedman making it impossible for him to reach a final opinion, and that Plaintiff

had not prosecuted her case in good faith. The Circuit Court held that Friedman "may not be

redeposed in this case period, no exceptions." Doc. No. 13 Ex. 14 at 48-59.

After the Circuit Court ruled that Friedman could not be re-deposed, defendants in the

underlying malpractice case moved for summary judgment. Compl. ¶ 36. The Court granted

summary judgment on several grounds, including that Isbell did not have an admissible expert

opinion as to duty, breach and causation, and there was no genuine dispute of material facts set

forth by Plaintiff. *See* Doc. No. 13 Ex. 15.[1]

In March 2011 Plaintiff, *pro se*, filed suit in the Circuit Court for Prince George's

County, Maryland, against Defendants. Plaintiff alleges breach of contract, negligent

misrepresentation, and intentional misrepresentation, and seeks $1.16 million in damages. On

May 3, 2011, this case was removed to this Court.

## II.     Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is "to test the sufficiency of [the]

complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain

specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a),

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain

statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In its determination, the Court must "accept the well-pleaded allegations of the complaint

as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in

the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176

F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal

allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal

conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986),

---

[1]Because these exhibits were attached to Plaintiff's amended Complaint and referenced therein, referring to and relying upon these exhibits does not convert Defendants' motion to dismiss into a motion for summary judgment. *See Thompson v. Greene*, 427 F.3d 263, 268 (4th Cir. 1991).

or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

In resolving a motion to dismiss, the Court should proceed in two steps. First, the Court should determine which allegations in the Complaint are factual allegations entitled to deference, and which are mere legal conclusions that receive no deference. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 1950.


**III.     Analysis**

Plaintiff alleges three causes of action in her amended complaint: (1) breach of contract (Count I); (2) negligent misrepresentation (Count II); and intentional misrepresentation (Count III). Defendants, in their motion, move to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6).

A.     Count I: Plaintiff's Breach of Contract Claim

In Count I of the amended Complaint, Plaintiff contends that Friedman committed a breach of contract by: (1) quitting as an expert witness without Plaintiff's consent on June 15, 2010; (2) subsequently refusing to be retained by Plaintiff under any reasonable terms or conditions; (3) refusing to be retained by Plaintiff's attorneys under any conditions; (4) breaching the standard of care expected of an expert witness in preparing an opinion; and (5) refusing to reaffirm his unqualified opinion and testify that Cooper and Paley Rothman had breached the standard of care in their representation of Plaintiff in her underlying divorce action.

Compl. ¶ 38. Defendants move to dismiss Count I of Plaintiff's amended Complaint under Rule

12(b)(6) because she fails to state a claim for relief. Specifically, Defendants argue that there was

no agreement or contract between the parties.

A contract is created when there is an offer by one party and an acceptance by the other

party. *Cochran v. Norkunas*, 919 A.2d 700, 713 (2007). Additionally, the acceptance of an offer

is a necessary element to contract formation, with a "demonstration that the parties had an actual

meeting of the minds regarding contract formation." *Id.* The Court cannot find that there was in

fact a valid, enforceable contract between Plaintiff and Friedman at any time, and therefore, no

breach of contract action may lie. The only contract Friedman entered into was the initial retainer

agreement with Chalpin, which ended after: (1) Plaintiff told Friedman to step down and stopped

paying Friedman, (2) Friedman's contract with Chalpin ended, and (3) Friedman told Plaintiff

she would need to find a new expert witness.

Plaintiff argues that she is a third party beneficiary of the initial retainer agreement.

However, even if Plaintiff could be considered a third party beneficiary, the retainer agreement

attached to Plaintiff's amended Complaint states that "this Agreement does not require Mr.

Friedman to testify in the event that he is not of the opinion that professional negligence occurred

in the underlying proceeding." Doc. No. 13 Ex. 1 at 1. The agreement merely calls for Friedman

to "render his opinion in a professional negligence case concerning the handling of a family law

proceeding," which Friedman did in his October 2, 2009 affidavit. Thus, Friedman had no

obligation under the original contract to testify or to reaffirm his earlier opinion.

After the initial retention contract ended, Plaintiff attempted several times to retain

Friedman, but he rejected all those offers. It does not appear that at any point there was a

"meeting of the minds" to enter into an agreement. *See Creel v. Lilly*, 729 A.2d 385, 399 (1999)

(reiterating that "to establish a contract, the minds of the parties must be in agreement as to its terms"). Friedman had no obligation to contract with Plaintiff. Friedman's duties to Plaintiff were discharged when his initial retainer contract ended. Because there was no viable contract between Plaintiff and Friedman, Plaintiff's breach of contract claim must be dismissed.

### B.       Plaintiff's Negligent Misrepresentation Claim

Plaintiff alleges that Friedman is liable for negligent misrepresentation. To prevail on a claim of negligent misrepresentation in Maryland, a plaintiff must show that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence. *Lloyd v. GMC*, 916 A.2d 257, 273 (2007).

Plaintiff alleges that Friedman negligently made false statements that he was willing to review the underlying divorce pleadings and documents, he was willing to render an opinion as to whether Cooper and Paley Rothman had breached the standard of care, and he was willing to testify as Plaintiff's expert concerning whether Cooper had breached the standard of care. Plaintiff alleges that these false statements caused her to authorize Chalpin to retain Friedman as an expert witness. Plaintiff further claims that as a result of Friedman's misrepresentation, summary judgment was granted in favor of the underlying malpractice defendants, and but for Friedman's misrepresentation, Plaintiff would have retained a different expert, would have won

the malpractice action and would have been awarded about $1 million in legal malpractice damages.

Even giving deference to the facts pleaded by Plaintiff, Plaintiff's allegations do not support a negligent misrepresentation claim. First, Plaintiff acknowledges elsewhere in her amended Complaint that Friedman did in fact review the underlying divorce pleadings and documents and render an opinion as to whether Cooper and Paley Rothman breached the standard of care. It was for this work that Friedman billed and Plaintiff's husband paid $60,000, pursuant to the retainer agreement. Ultimately, after the retainer agreement between Chalpin and Friedman had ended, Friedman's opinion changed regarding Cooper's liability for malpractice, and he became unwilling to testify against the defendants in the underlying malpractice action as he initially planned and represented that he would.

Plaintiff's negligent misrepresentation claim is predicated on Friedman's failure to testify as Plaintiff wanted him to.  However, the original retainer agreement between Chalpin and Friedman, attached by Plaintiff to her amended Complaint, expressly notes that Friedman is not required to testify in the event that he is not of the opinion that professional negligence occurred in the underlying proceeding. The retainer agreement also cites Friedman's fees at $360.00 an hour. Thus, Plaintiff was on notice that her attorney was hiring an expensive expert, and that the substance of Friedman's opinion or testimony was not for sale. In sum, the facts alleged by Friedman do not support the elements of a negligent misrepresentation claim.

Moreover, proximate cause is a requisite element in a negligent misrepresentation claim, and Plaintiff has pleaded no facts in support of her allegation that if she had hired a different expert, she would have won the underlying malpractice claim and been awarded $1 million in legal malpractice damages. Compl. ¶ 48. The record of the underlying malpractice claim,

attached by Plaintiff to her amended Complaint, suggests otherwise. The Circuit Court granted

summary judgment "for all of the reasons" set forth by Defendants: that (1) Plaintiff did not have

an expert who was ready, willing, and able to give an opinion; (2) Plaintiff failed to adduce

sufficient evidence to show that there are disputed issues of material fact on the issue of

disparagement; and (3) the opinion of the accountant was fatally flawed. Doc. No. 13 Ex. 15 at

59-60. The Court stated that there is "no genuine disputed material fact that has been set forth in

the papers" and that defendants were entitled to judgment as a matter of law. *Id.* at 61-62.

Because Plaintiff has not pleaded sufficient facts to make out the proximate cause element, the

Court must dismiss Plaintiff's negligent misrepresentation claim.


        C.      Plaintiff's Intentional Misrepresentation Claim

To state a proper claim for intentional misrepresentation in Maryland, a plaintiff must

allege facts showing that: (1) the defendant asserted a false representation of a material fact to

the plaintiff; (2) the defendant knew that the representation was false, or the representation was

made with such reckless disregard for the truth that knowledge of the falsity of the statement can

be imputed to the defendant; (3) the defendant made the false representation for the purpose of

defrauding the plaintiff; (4) the plaintiff relied with justification upon the misrepresentation; and

(5) the plaintiff suffered damages as a direct result of the reliance upon the misrepresentation.

*Finch v. Hughes Aircraft Co.*, 469 A.2d 867 (1984).

In her intentional misrepresentation claim, Plaintiff alleges that Friedman falsely stated

that he was willing to testify as Plaintiff's expert concerning whether the underlying defendants

had breached the standard of care, and that Friedman knew his statements were false. Compl. ¶

51. Plaintiff alleges that if Friedman had disclosed the truth initially that he was not willing to

testify, she would not have paid Friedman in excess of $60,000 to review the underlying divorce pleadings, transcripts, and documents and to render his expert opinion. She also alleges that but for Friedman's misrepresentations, she would have prevailed in her underlying legal malpractice claim. *Id.*

Plaintiff does not allege sufficient facts to support her claim of fraud. She merely recites facts showing that Friedman was initially willing to testify that Cooper and Paley Rothman were liable for legal malpractice, but that he subsequently retracted from this position and stated that he had no opinion. Moreover, Plaintiff fails to allege facts sufficient to show proximate cause because she again offers no facts in support of her contention that, had she hired a different expert witness, she would have won the underlying malpractice claim.

At the motion-to-dismiss stage, it is not the Court's role to make a final judgment as to the factual merit of Plaintiff's case. Plaintiff's burden at this juncture is merely to provide enough detail to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. For the reasons stated above, Plaintiff has not presented enough to allow her claim to proceed into discovery. Therefore, Defendants' motion must be granted as to Plaintiff's intentional misrepresentation claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's amended complaint will be granted, and Defendants original motion to dismiss will be denied as moot. A separate order will follow.

September 16, 2011                                        /s/
         Date                                  Alexander Williams, Jr.
                                               United States District Judge